FILED

2014 Jul-02  AM 11:00
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | |
|---|---|
| **ANNE KATHERINE WASLIN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 1:13-CV-1784-VEH** |
| | ) |
| **CAROLYN W. COLVIN,** | ) |
| **ACTING COMMISSIONER,** | ) |
| **SOCIAL SECURITY** | ) |
| **ADMINISTRATION,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

Plaintiff Anne Katherine Waslin ("Ms. Waslin") brings this action under 42 U.S.C. § 405(g), Section 205(g) of the Social Security Act. She seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied her application for child's Disability Insurance Benefits ("DIB"). Ms. Waslin timely pursued and exhausted her administrative remedies available before the Commissioner. The case is thus ripe for review under 42 U.S.C. § 405(g).

## FACTUAL AND PROCEDURAL HISTORY

Ms. Waslin was nineteen-years old at the time of her hearing before the Administrative Law Judge ("ALJ"). (Tr. 60). She has completed the 12th grade. *Id*.

She has worked for one week stocking and cleaning at a gas station and had a brief volunteer position at a veterinary clinic. (Tr. 258). She claims she became disabled on August 1, 2008, due to Attention Deficit Hyperactivity Disorder ("ADHD"), Oppositional Defiant Disorder ("ODD"), Obsessive Compulsive Disorder, Depression, and Reactive Attachment Disorder. (Tr. 121).

On October 21, 2010, Ms. Waslin protectively filed a Title II application for child's DIB. *Id.* On February 8, 2011, the Commissioner initially denied this claim. *Id.* Ms. Waslin timely filed a written request for a hearing before the ALJ on April 7, 2011. (Tr. 80). The ALJ conducted a hearing on the matter on July 2, 2012. (Tr. 41). On July 24, 2012, the ALJ issued her opinion concluding that Ms. Waslin was not disabled and denying her benefits. (Tr. 34). Ms. Waslin then timely petitioned the Appeals Council to review the decision on September 21, 2012. (Tr. 21). On July 24, 2013, the Appeals Council issued a denial of review on her claim. (Tr. 23).

Ms. Waslin filed a Complaint with this court on September 25, 2013, seeking review of the Commissioner's determination. (Doc. 1). The Commissioner answered on February 10, 2014. (Doc. 8). Ms. Waslin filed a supporting brief (Doc. 10) on March 27, 2014, and the Commissioner responded with her own (Doc. 12) on April 28, 2014. With the parties having fully briefed the matter, the court has carefully considered the record, and for the reasons stated below, reverses the Commissioner's

2

denial of benefits, and remands the case for further development and consideration.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id*.

This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions de novo because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[1] For adults, the Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). For children, the definition requires "marked and severe functional limitations" rather than the inability to do substantial gainful activity. 42 U.S.C. 1382c(a)(3)(C)(i). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" that "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether an adult claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

---

[1]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2013.

(1)   whether the claimant is currently employed;
(2)   whether the claimant has a severe impairment;
(3)   whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4)   whether the claimant can perform his or her past work; and
(5)   whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The sequential analysis goes as follows:

Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Id*.

For children, there is a similar, three-step evaluation process. 20 C.F.R. § 416.924(a). The sequential analysis goes as follows:

First, the ALJ must determine whether the child is engaged in substantial and gainful activity. Second, if the child is not engaged in substantial and gainful activity, the ALJ must determine whether the child has an impairment or combination of impairments that is severe. Finally, at step three, the ALJ must determine whether the child's

5

impairment meets, medically equals, or functionally equals the Listings.

*Gray ex rel. Whymss v. Commissioner of Social Sec.*, 454 F. App'x 748, 750 (11th

Cir. 2011) (citing to 20 C.F.R. § 416.924(a)); *accord Encarnacion ex rel. George v.*

*Barnhart*, 331 F.3d 78, 84 (2d Cir. 2003).

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

After her review of the record, the ALJ made the following findings:

1.  Ms. Waslin met the insured status requirements of the Social Security Act through 20 C.F.R. §404.102 and §404.350(a)(5). (Tr. 28).

2.  Ms. Waslin had not engaged in substantial gainful activity since August 1, 2008, the alleged disability onset date. *Id.*

3.  Ms. Waslin had the following severe impairments: ADHD, ODD, major depression, and borderline personality disorder. *Id.*

4.  Ms. Waslin did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

5.  Ms. Waslin had the residual functioning capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations: Claimant can understand, remember, and carry out simple instructions and attend for two-hour periods. She would likely miss one to two days of work each month due to psychiatric symptoms. Her contact with the public should be infrequent and non-intense and supervision should be tactful. Changes in the workplace should be infrequent and introduced gradually. (Tr. 30).

6.  Ms. Waslin has no past relevant work. (Tr. 32)

7.  Ms. Waslin was 15 years old, which is defined as a younger individual

6

age 18-49, on the alleged disability onset date. *Id.*

8.   Ms. Waslin has a limited education and is able to communicate in English. *Id.*

9.   Transferability of job skills is not an issue because Ms. Waslin does not have past relevant work. *Id.*

10.  Considering Ms. Waslin's age, education, work experience, and residual functioning capacity, there were jobs that existed in significant numbers in the national economy that she could perform. *Id.*

11.  Ms. Waslin had not been under a disability, as defined in the Social Security Act, from August 1, 2008, through the date of the decision, July 24, 2012. (Tr. 33).

## ANALYSIS

The court may reverse a finding of the Commissioner if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[2] However, the court "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Ms. Waslin urges this court to reverse the Commissioner's decision to deny her

---

[2]*Strickland* is binding precedent in this Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

benefits on the grounds that it cannot be based on substantial evidence. (Doc. 10.) In its review, this court finds that the ALJ's decision is due to be reversed because it does not does not apply the correct standards for evaluating children. Alternatively, the ALJ's decision is due to be reversed because it does not adequately state how much weight is accorded to each medical source opinion, and it does not treat medical evidence in accordance with binding precedent.

## I.      The ALJ Did Not Apply the Correct Standards for Evaluating Children.

Ms. Waslin was under the age of 18 on her alleged onset date and when she applied for child's DIB. (Tr. 26). Ms. Waslin was over the age of 18 by the time of her hearing (Tr. 26), but was still entitled to claim child's DIB. 20 C.F.R. § 404.350(a)(5). ("[You are entitled to claim child's DIB if] you are 18 years old or older and have a disability that began before you became 22 years old"). The Eleventh Circuit has allowed the evaluation of an individual claimant under both the child's and adult's evaluation processes for a child's DIB claimant who attained the age of 18 during the disability determination process. *See Jordan v. Commissioner of Social Sec. Admin.* 470 F. App'x 766, 768 (11th Cir. 2012) (finding that the claimant qualified for neither child's nor adult's benefits, using both evaluation processes).

Here, the ALJ employed listings 12.04, 12.06, and 12.08, which are <u>only</u>

applicable to adults:

> The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.06, and 12.08. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme.

(Tr. 28-29). Listings 112.04, 112.06, and 112.08 are somewhat consistent with the adult listings referenced by the ALJ, but are also significantly adjusted to fit mental disorders in children. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 112.00 ("There are significant differences between the listings for adults and the listings for children ... The presentation of mental disorders in children ... may be subtle and of a character different from the signs and symptoms found in adults."). In order for Ms. Waslin's claim for child's DIB to be properly decided, the ALJ should have analyzed Ms. Waslin's impairments using the three-step child's evaluation process, using the criteria of listings 112.04, 112.06, and 112.08, in addition to the evaluation under the adult process.

The ALJ's exclusive use of the adult's process to evaluate Ms. Waslin's impairments cannot be excused as harmless error because the criteria in the child's

listings are substantially different, and their use may have lead to a different conclusion. *Cf. Smith v. Astrue*, No. 2:08-CV-01101-VEH, (Doc. 12) (N.D. Ala June 6, 2009) ("This court is unable to determine whether Mr. Smith would be deemed disabled from an application of the grids and thus ... whether the classification of the wrong age category potentially constitutes harmless error."). The ALJ should have applied the "paragraph B" functional limitations criteria for children aged 3-18, which feature different categories than the adult's listing:

1. cognitive/communicative function
2. age-appropriate social functioning
3. age-appropriate personal functioning, and
4. maintaining concentration, persistence, or pace.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 112.00(c).

The ALJ's failure to follow the proper legal framework is critical here. For example, the ALJ concluded that Ms. Waslin has only mild restriction in her activities of daily living, citing the report from Dr. Summerlin's office which stated that Ms. Waslin was attired in clean clothing and had given good attention to her hygiene and grooming. (Tr. 29). The child's counterpart to the activities of daily living category is the age-appropriate personal functioning category, which considers a child's ability for self-care and managing personal needs, health and safety. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 112.00(C)(4)(a). Unlike the activities of daily living category of

the adult's listing, the child's listing specifically identifies self-injurious behavior as a manifestation of impaired personal functioning. *Id.* Ms. Waslin has a history of self-injurious behavior, including cutting herself and banging her head against walls. (Tr. 58). The record also indicates that Ms. Waslin has difficulties with personal hygiene ("She doesn't care how she looks ... Refuses to bathe daily ... must be reminded to brush teeth.") (Tr. 132), taking her medication ("Almost every dose I have to prompt her.") (Tr. 54), managing money ("[Without] supervision, she would have depleted [her] balance long ago.") (Tr. 134), and driving ("She can drive [the] golf cart but wrecked it because of distraction. Refuses to get permit or take driving lessons. She is really afraid because of poor concentration and inability to avoid distractions."). *Id*. This evidence suggests that Ms. Waslin's personal functioning impairment is at least moderate, if not marked or extreme, under the child's listing criteria. If Ms. Waslin's personal functioning impairment is found to be extreme, or if it is found to be marked along with a marked impairment in another category, her impairments will meet the criteria for the listed impairments, and she will be deemed disabled. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 112.00. Therefore, the ALJ must reevaluate Ms. Waslin under the child's listing.

If Ms. Waslin's impairments do not meet or medically equal the listed impairments, her impairments must still be evaluated for functional equivalence to

the listed impairments. 20 C.F.R. § 416.926a(a). Six domains of functioning are considered:

1. acquiring and using information
2. attending and completing tasks
3. interacting and relating with others
4. moving about and manipulating objects
5. caring for yourself, and
6. health and physical well-being.

20 C.F.R. § 416.926a(b)(1). As with the criteria used in the child's listing, the application of the functional equivalence criteria may result in a different determination of Ms. Waslin's disability status when evaluated as a child. On remand, the ALJ should consider Ms. Waslin's extensive use of psychiatric medicines, including the impact of side-effects and her difficulties with rapid metabolization (Tr. 55-57, 261), and her history of attending special educational facilities (Tr. 45-46) when evaluating her functional limitations. 20 C.F.R. Pt. 404, Subpt. P, App. 1. § 112.00(E),(F).

No presumption of validity attaches to the legal standards applied by the ALJ. *Cornelius*, 936 F.2d at 1145. Furthermore, the ALJ must follow the required evaluation process. *Powell ex rel. Powell v. Heckler*, 773 F.2d 1572, 1575 (11th Cir. 1985) ("Failure to [follow the sequential evaluation process] is grounds for reversal."). Since the ALJ did not use the correct process to determine whether Ms.

Waslin is disabled, the decision is due to be reversed and remanded. On remand, the ALJ should apply the child's disability determination process in addition to the adult's process.

## II.   The ALJ Did Not Treat the Medical Evidence Properly.

In assessing the medical opinion evidence in any case, an ALJ must "state with particularity the weight he gave the different medical opinions and the reasons therefore." *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam) (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)); *see also Caulder v. Bowen*, 791 F.2d 872, 880 (11th Cir. 1986) (requiring the ALJ on remand to articulate his reasons for not giving weight to a consulting physician's diagnoses accompanying a pulmonary function test); *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) ("In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence."). For this reason, the ALJ's failure to specify the weight given to medical opinion evidence is reversible error.

Even when the ALJ does not expressly state the weight accorded to medical opinions, a reviewing court may attempt to discern what weight has been implicitly accorded. When considering the relative weight of medical opinions, an ALJ is generally bound by rules of priority based on the nature of the physician's interaction

with the claimant. 20 C.F.R. § 404.1527, *see also Sharfarz*, 825 F.2d at 279-80 ("The

opinions of non-examining, reviewing physicians ... when contrary to those of the

examining physicians, are entitled to little weight, and standing alone do not

constitute substantial evidence."). Although the ALJ did not state the weight accorded

to the various medical opinions, her decision implies that she accorded greater weight

to the opinions of Dr. Robert Estock ("Dr. Estock") and Dr. Robert G. Summerlin

("Dr. Summerlin") than to Dr. Robert Storjohann's ("Dr. Storjohann") opinion, even

though Dr. Storjohann was the <u>only</u> one of these physicians <u>to actually examine Ms.</u>

<u>Waslin</u>.   Furthermore, little mention was made regarding the records of Dr. Gavin

Brunsvold ("Dr. Brunsvold"), Ms. Waslin's treating physician.

**A.     The ALJ's Deficient Treatment of Dr. Brunsvold's Treatment Records**.

        There is no clear indication of the weight accorded to the treatment records of

Dr. Brunsvold, Ms. Waslin's treating physician at Christian Psychiatry & Associates,

despite the fact that the opinions of treating physicians are generally entitled to the

greatest weight. 20 C.F.R. § 404.1527(d)(2) ("Generally, we give more weight to

opinions from your treating sources ... if we find that a treating source's opinion ...

is well-supported ... we will give it controlling weight.") A physician's treatment

notes are  considered to be a medical opinion. *Winschel v. Comm'r of Soc. Sec.*, 631

F.3d 1176, 1179 (11th Cir. 2011). ("The Commissioner argues that the ALJ was not

required to consider the treating physician's treatment notes because they did not constitute a 'medical opinion,' but this argument ignores the language of the regulations.") (citing 20 C.F.R. § 404.1527(a)(2), 20 C.F.R. § 416.927(a)(2)). The ALJ's only specific citation to Ms. Waslin's records of treatment by Dr. Brunsvold is to the Global Assessment of Functioning ("GAF") score he assigned to her. (Tr. 32). These treatment records were also referenced non-specifically to support the claim that Ms. Waslin has a long history of psychiatric treatment. *Id*. The ALJ stated that no treating physician has indicated that Ms. Waslin was disabled for all work,[3] but her record of treatment by Dr. Brunsvold was never discussed in a manner that would inform the court of the weight that the ALJ accorded to Dr. Brunsvold's opinion, much less why that opinion was discounted (if, indeed, it was). Such a cursory acknowledgment of the treating physician's opinion is unacceptable. *See Winschel*, 631 F.3d at 1179 ("[T]he ALJ referenced Winschel's treating physician only once ... The ALJ did not mention the treating physician's medical opinion, let alone give it 'considerable weight.'"). If Dr. Brunsvold's opinion was discounted without discussion, that would be reversible error. *See Phillips v. Barnhart*, 357 F.3d

---

[3] The ALJ may not draw conclusions about a physician's opinion of a claimant's disability from the lack of an indication by the physician that the claimant cannot work. *See Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988) ("Such silence is equally susceptible to either inference, therefore, no inference should be taken.").

1232, 1241 (11th Cir. 2004) ("When electing to disregard the opinion of the treating physician, the ALJ must clearly articulate [her] reasons.").

## B.     The ALJ'S Treatment of Dr. Estock's Report

There is only some brief, ambiguous discussion of the weight accorded to the report of Dr. Estock, a paper review doctor. The ALJ stated "the opinion of [Dr. Estock] is accorded some weight; to the extent it is consistent with the objective medical evidence." (Tr. 32). The ALJ never explained "the extent," in her opinion, that Dr. Estock's opinion "is consistent with the objective medical evidence." *Id*. This court has found a similar statement to be insufficient. *See Stegall v. Colvin*, No. 5:11-CV-3311-VEH, 2013 WL 1346747, at *4 (N.D. Ala. Mar. 28, 2013) ("[T]he ALJ justified his decision to give greater weight to a reviewing physician's opinion ... by summarily stating that Dr. Omonuwa's opinion was consistent with the record. Such cursory treatment is deficient under the law in this Circuit.").

Dr. Estock was a non-examining, reviewing physician, so his opinion should be entitled to little weight. *Sharfarz*, 825 F.2d at 279-80. Additionally, Dr. Estock's report indicates that he did not consider the report from Dr. Summerlin's office or any non-medical evidence when assessing Ms. Waslin, which entitles his opinion to less weight. *See Shinn ex rel. Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276, 1287 (11th Cir. 2004) ("Because [the reviewing physicians's] opinions were based on woefully

16

incomplete evidence, they should not be accorded a great amount of weight."). Further, Dr. Estock's report conflicts with the testing performed in Dr. Summerlin's office and other record evidence, and is thus entitled to less weight. 20 C.F.R. §404.1527(d)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give that opinion."), *see also Syrock v. Heckler* 764 F.2d 834, 835 (11th Cir. 1985) ("The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.").

For example, the diagnostic form used by Dr. Estock indicates that Ms. Waslin is "Not Significantly Limited" in her abilities to "maintain attention and concentration for extended periods" and to "maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness." (Tr. 367). Yet the Conners' Continuous Performance Test, administered in Dr. Summerlin's office, objectively shows that Ms. Waslin has difficulty maintaining attention (Tr. 373). The administrative record also shows that Ms. Waslin has a history of inappropriate behavior, such as an incident in which she "exploded verbally" at a teacher, saying "I wish you were dead" (Tr. 342), poor grooming ("[H]as gone 5-6 days (often-- unless reminded) to bathe and clean hair.") (Tr. 256), and self-injurious conduct. ("Took kitch[en] knife to [her] room ... enjoys cut[ting], doesn't want to stop.") (Tr. 343).

Indeed, Dr. Estock's own RFC contradicts his diagnostic form, by stating that Ms. Waslin can only "maintain attention and concentration for 2 hours with all customary rest breaks," and that her "contact with the general public should be infrequent and non-intensive." (Tr. 368). Internal inconsistency is grounds for according less weight to a medical source opinion. *See Phillips,* 357 F.3d at 1241 ("[G]ood cause [to accord less weight] exists when the ... physician's opinion was conclusory or inconsistent with the doctor's own medical records."); *Nadeau v. Astrue*, No. 5:08-CV-1981-VEH (Doc. 12) (N.D. Ala. April 20, 2009) ("Dr. Yelda's most recent opinion is internally inconsistent and provided further proof why the ALJ properly discounted any medical source opinion from Dr. Yelda.").

Despite these shortcomings, the ALJ's opinion implies that she accorded controlling weight to Dr. Estock's opinion. The ALJ's conclusion that Ms. Waslin's impairments do not meet the "paragraph B" criteria for the listed impairments <u>is identical to Dr. Estock's opinion on those criteria</u>, although Dr. Estock's report was not referenced.[4] (Tr. 29, 362). Additionally, the RFC determined by Dr. Estock (Tr. 368) is substantially identical to the RFC used by the ALJ in the opinion (Tr. 30) and

---

[4]Both the ALJ and Dr. Estock stated that Ms. Waslin's restrictions as to activities of daily living are mild, her difficulties with social functioning are moderate, her difficulties with concentration, persistence, or pace are moderate, and that she has experienced no episodes of decompensation of extended duration.

during the ALJ's questioning of the vocational expert at the hearing.[5] (Tr. 63, 64).

The ALJ also used Dr. Estock's assessment to discredit other evidence. Ms. Waslin's statements about her impairments were deemed "not credible to the extent they are inconsistent with the above [RFC]" (Tr. 32). The specific inconsistencies simply are not disclosed, and the RFC is inadequate for contradicting other evidence due to its basis in Dr. Estock's reviewing assessment. The ALJ stated that "Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and [RFC] ... a finding of 'not disabled' is therefore appropriate" (Tr. 33). Since Dr. Estock's RFC is the only medical opinion mentioned in the ALJ's conclusion of "not disabled," the ALJ appears to have placed great weight upon Dr. Estock's opinion, without explanation vis-a-vis other competing medical opinions and evidence.

## C. The ALJ's Treatment of the Report from Dr. Summerlin's Office

There is no explanation of the weight accorded to the "report" of a consulting physician, Dr. Robert G. Summerlin ("Dr. Summerlin"), but the ALJ implicitly accorded substantial weight to Dr. Summerlin's opinion. This opinion was cited in

---

[5] The ALJ cannot rely on the opinion of a vocational expert when the hypothetical question (based on the claimant's RFC) posed to the vocational expert is deficient. *See Vega v. Commissioner of Soc. Sec.*, 265 F.3d 1214 (11th Cir. 2001) ("Upon remand, the ALJ should pose a more thorough hypothetical question").

the ALJ's determination that Ms. Waslin's impairments do not meet or medically equal the criteria of the adult listings (Tr. 29). However, Dr. Summerlin's assessment is not from an acceptable medical source. 20 C.F.R. § 404.1519n(e) states that "consultative examination reports will be personally reviewed and signed by the medical source who actually performed the examination." *Id*. (emphasis added). Dr. Summerlin's report indicates that he merely concurred with the assessment of the actual examiner, Alice Summerlin, a licensed professional counselor (Tr. 374), who would not be considered an acceptable medical source. *See* C.F.R. § 404.1513(a)(1)-(5) (listing acceptable medical sources, but not including licensed professional counselors); *Vaughn v. Colvin*, No. 4:12-CV-1793-VEH, 2013 WL 5519680, at *5 (N.D. Ala Sept. 30, 2013) ("Dr. Walker, as a 'licensed professional counselor' ... was not an 'acceptable medical source' under the Regulations ... The ALJ was thus free to discount Dr. Walker's assessment.") (citations omitted). Opinions from non-physicians are entitled to less weight than opinions from acceptable medical sources. *See Freeman v. Barnhart*, 220 F. App'x. 957, 961 (11th Cir. 2007) ("[His] opinion is entitled to less weight than the opinions of medical doctors because he is a physical therapist.").

In an unpublished opinion, the Eleventh Circuit has indicated that relying upon an examination report which is not signed by the actual examiner would be error,

though there the mistake was found to be harmless as it was cumulative evidence. *See Pichette v. Barnhart,* 185 F. App'x 855, 856 (11th Cir. 2006) (finding that substantial evidence, including two other medical source opinions, still supported the ALJ's decision). Because the ALJ's opinion is not supported by other medical sources in this case[6], the ALJ's reliance upon Dr. Summerlin's "report" is not harmless. 28 U.S.C.A. § 2111 (Error is only harmless when it does not affect the substantial rights of the parties.). Dr. Summerlin's acceptance of counselor Alice Summerlin's examination and report is the <u>only</u> evidence cited in the ALJ's determination that Ms. Waslin's impairments as to activities of daily living and social functioning are merely mild and moderate (as opposed to marked or extreme). (Tr. 29). These issues are critical in determining whether Ms. Waslin's impairment equals the criteria for listed impairments, and thus greatly affect the ultimate determination of her disability status. Due to the report's importance to the ALJ's decision, along with the other evidentiary problems contained in this opinion, the use of Dr. Summerlin's unacceptable medical source opinion is not harmless error.

**D.    The ALJ's Treatment of Dr. Storjohann's Report**

The ALJ discounted the opinion of a consulting physician, Dr. Robert

---

[6]The court has previously explained why Dr. Estock's opinion is not a persuasive medical source statement.

Storjohann ("Dr. Storjohann"), who described Ms. Waslin as unable to work. However, the ALJ made neither the weight accorded to his opinion nor the grounds for discrediting it clear in her decision. As the only examining physician who performed a disability assessment of Ms. Waslin, Dr. Storjohann's opinion was entitled to more weight than the ALJ's opinion indicates was accorded it. *See Sharfarz*, 825 F.2d at 279-80. The ALJ stated that "Dr. Storjohann paints a rather dire picture in his assessment of the claimant; however, his assessment stands alone" (Tr. 32), but the ALJ did not explain specifically how or why the record discredits Dr. Storjohann's opinion. *Id*.

> Earlier in her decision, the ALJ summarized Dr. Storjohann's assessment:

> [H]e opined that the claimant's social judgment and interpersonal insight were poor (Ex. 13F). He indicated that the claimant was unable to make acceptable work decisions in a consistent or reliable manner and believed she was unable to manage her own financial affairs. He felt that the claimant has moderate to marked deficits in her ability to understand, carry out, and remember instructions in a work setting and marked deficits in ability to respond appropriately to supervision, coworkers, and work pressures in a work setting.

(Tr. 31). However, the ALJ never indicated which of these medical opinions are inconsistent with other evidence, and never stated that all of them, considered together, are so contradicted.

> The ALJ discounted Dr. Storjohann's opinion by referencing an assessment of

Ms. Waslin by the Alabama Department of Rehabilitation Services, which states that she is capable of working. (Tr. 32). That assessment was performed by a vocational counselor who does not qualify as an acceptable medical source. *See* C.F.R. § 404.1513(a)(1)-(5) (listing acceptable medical sources, but not including vocational counselors). The opinions of non-physicians are entitled to less weight than acceptable medical source opinions. *See Freeman*, 220 F. App'x. at 961. Furthermore, that vocational assessment indicates that Ms. Waslin <u>needs to continue treatment and should have extensive accommodations to succeed at work and school</u>, and thus does not strongly contradict Dr. Storjohann's opinion that Ms. Waslin has moderate to marked deficits in work-related abilities. (Tr. 351, 405).

The ALJ also discounted Dr. Storjohann's opinion by citing to Dr. Brunsvold's GAF score of 60 for Ms. Waslin, which indicates moderate symptoms (Tr. 32). While this is potentially inconsistent with Dr. Storjohann's opinion, the ALJ did not adequately explain the context and significance of the multiple GAF scores assigned to Ms. Waslin. Ms. Waslin was also assigned GAF scores by Dr. Storjohann, (50, on February 1, 2011) (Tr. 351), Dr. Summerlin,[7] (71, on August 30, 2011) (Tr. 374), and Dr. Scott Blackwell,[8] (35, on April 24, 2002) (Tr. 284), but the ALJ did not mention

---

[7]Alice Summerlin is likely the person responsible for determining this GAF score, as she saw Ms. Waslin personally while Dr. Summerlin did not.

[8]Dr. Scott Blackwell is not mentioned in the opinion.

these scores or any issue raised by the wide range of mental impairment they represent. By not fully addressing the discrepancy in these GAF scores, the ALJ not only failed to illustrate why Dr. Storjohann's opinion should be disregarded, but also failed to meet her duty to resolve conflicting medical evidence. *See Richardson,* 402 U.S. at 399 (1971) ("[T]he trier of fact has the duty to resolve conflicting medical evidence."); *Banks v. Astrue*, No. 7:11-CV-3971-VEH, 2013 WL 531106, at *5 (N.D. Ala Feb. 12, 2013) ("By not addressing the conflicting GAF scores in his decision, the ALJ failed to resolve a conflict between an opinion suggesting 'no more than slight impairment' and another suggesting a 'serious impairment.'").

## CONCLUSION

Based upon the court's evaluation of the evidence in the record, the court finds for these multiple, independent reasons that the Commissioner did not apply proper legal standards in reaching her final decision and that her decision is not supported by substantial evidence. Accordingly, the decision will be reversed and remanded by separate order.

**DONE** and **ORDERED** this the 2nd day of July, 2014.

**VIRGINIA EMERSON HOPKINS**
United States District Judge